# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON, | CASE NO. 1:09-cv-00484-GSA PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| MAURICE JUNIOUS, et al., | |
| Defendants. | (Doc. 1) |
| _____/ | THIRTY-DAY DEADLINE |

**Screening Order**

I.    **Screening Requirement**

Plaintiff Barry Louis Lamon, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 16, 2009.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

1

1    A complaint must contain "a short and plain statement of the claim showing that the pleader
2  is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but
3  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
4  do not suffice," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v.
5  Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)), and courts "are not required to
6  indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)
7  (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal
8  conclusion are not.  Iqbal, 129 S.Ct. at 1949.

9    Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated
10 in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis
11 added).  This requires the presentation of factual allegations sufficient to state a plausible claim for
12 relief.  Iqbal at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere
13 possibility of misconduct falls short of meeting this plausibility standard.  Iqbal at 1949-50; Moss
14 at 969.

15 **II.    Plaintiff's Claims**

16     **A.    Allegations**

17     Plaintiff, who is incarcerated at California State Prison-Corcoran, alleges that as a result of
18 the inmate grievances and lawsuits he has filed, prison officials retaliated against him by falsely
19 reporting he was suicidal, stripping his cell of his property, taking his television, admitting him to
20 the Acute Care Hospital, and involuntarily treating him with psychiatric medication for six months.
21 Plaintiff  seeks money damages and declaratory relief.

22     Plaintiff alleges that on February 20 and 21, 2008, Defendant Maguass served him his
23 breakfast and lunch in a soupy, unidentifiable mess.  On February 21, 2008, after Plaintiff
24 complained and demanded to speak to a sergeant, Maguass called the staff psychiatric technician,
25 falsely reported that Plaintiff said he was suicidal, and requested that Plaintiff be admitted to the
26 Acute Care Hospital for a day so that Maguass could get Plaintiff out of the unit.

27     While awaiting an escort to the hospital, Plaintiff watched as Maguass stripped his cell of his
28 property and placed it on a cart, in violation of prison regulations requiring that staff hold an

2

1   inmate's cell for him for at least ten days if the inmate is at the hospital, out to court, or at some other

2   location.  Maguass told Plaintiff he was tired of Plaintiff filing grievances and lawsuits, and that

3   Plaintiff had better beg the doctors to keep him for ten days because Maguass was taking all of his

4   property and was not going to feed Plaintiff if he returned to the unit.

5       After Plaintiff was escorted to the Acute Care Hospital, staff psychiatrist Dr. Barda falsely

6   claimed that Plaintiff told him he was feeling suicidal, and had Plaintiff admitted to the Acute Care

7   Hospital.  On February 22, 2008, Staff Psychiatrist Dr. Cohen and members of the ACH Unit 3

8   Interdisciplinary Treatment Team (IDTT), all of whom were named as defendants in a section 1983

9   suit Plaintiff filed on February 19, 2008, falsely stated that Plaintiff refused to accept psychotropic

10  medication and ordered that Plaintiff be involuntarily treated with medication.  Plaintiff alleges that

11  they took that action after he told them he would take psychotropic medication but would then file

12  suit against them for prescribing it when they knew he did not need it.

13      On April 2, 2008, an administrative law hearing was held on Staff Psychiatrist Marc Z.

14  Talisman and the IDTT's petition to continue involuntarily medicating Plaintiff.  Dr. Talisman was

15  named as a defendant in the lawsuit Plaintiff filed February 19, 2008, and during the hearing he gave

16  false testimony to support the petition, and mentioned the number of lawsuits Plaintiff had filed

17  against staff at Corcoran to date and other information about Plaintiff's litigation that he should not

18  have legitimately or lawfully known.  The petition was granted by a judge, leading to the extension

19  of the involuntarily treatment until September 24, 2008.

20      Finally, on April 9, 2008, Defendant Magana issued Plaintiff's property to him.  Plaintiff's

21  television, hundreds of pages of legal documents and medical records, witness statements, more than

22  one-hundred dollars worth of vitamins, books, and other items were missing.  Plaintiff was

23  permanently deprived of his television based on Maguass' false statement in the February 21

24  property inventory sheet  that all of the buttons were altered.

25      Plaintiff alleges that he was retaliated against in violation of the First Amendment, and

26  subjected to cruel and unusual punishment in violation of the Eighth Amendment and the invasion

27  of his personal security interest in violation of the Fourteenth Amendment.  Plaintiff also alleges

28  ///

supervisory liability claims, an assault and battery claim, and a claim for violation of California Civil Code section 52.1.

###    B.    First Amendment Retaliation Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff's allegations are sufficient to state a claim against Defendant Maguass for having Plaintiff admitted to the ACH, stripping his cell of his property, and causing Plaintiff to be permanently deprived of his television in retaliation against Plaintiff for filing grievances and lawsuits.

However, there are no facts in the complaint supporting a retaliation claim against Defendant Barda for admitting Plaintiff to the hospital. Although Plaintiff alleges Barda falsely claimed that Plaintiff told him he was suicidal, there is no indication of motive. Even if based on a false statement by Barda, the mere decision of Barda to admit Plaintiff to the hospital does not support a retaliation claim.

The retaliation claim against Defendant Cohen also fails. The allegation that Cohen and the IDTT falsely stated that Plaintiff refused medication and ordered that he be involuntarily medicated after he said he would take the medication but would then sue them falls short of stating a claim for retaliation. A mere threat to file suit does not rise to the level of a protected activity, and Plaintiff has not alleged any facts demonstrating that Cohen and the IDTT took the action they did because

///

///

///

4

of a previous lawsuit filed by Plaintiff or demonstrating that they had any knowledge of his previous lawsuits.[1]

Plaintiff 's allegation that Defendant Talisman knew he was not suicidal or delusional and did not need to be treated, but falsely testified to the contrary at the administrative hearing is sufficient to state a claim.  Plaintiff has adequately alleged that Talisman was aware of his litigation activities, and that Talisman acted in retaliation against Plaintiff.

Finally, Plaintiff alleges only that when Defendant Magana issued Plaintiff his property, Magana "conspired with the aforementioned Defendants to retaliate against [Plaintiff] by deliberately enforcing Corcoran property rules in a biased, unreasonable and malicious fashion" by depriving Plaintiff of property items that were allowable or previously authorized.  (Doc. 1, ¶47.)  This allegation does not support a viable claim for relief under section 1983.  A conclusory assertion of wrongdoing is insufficient.  Iqbal at 1949-50; Moss at 969.

## C.   Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Defendant Maguass reported that Plaintiff was suicidal and requested that Plaintiff be taken to the Acute Care Hospital, and Defendant Barda admitted Plaintiff to the Mental Health Acute Care Unit.  Assuming the truth of Plaintiff's allegations that Maguass had him escorted to the hospital in

---

[1] The Court takes judicial notice of the fact that Plaintiff did not file any lawsuits in the Eastern District of California on or around February 19, 2008.  Court records reflect that the only 2008 suit filed in this district was filed by Plaintiff on July 30, 2008.  Plaintiff's own recitation of his lawsuits in the complaint includes only the aforementioned suit for 2008.  (Doc. 1, court record pp. 5-6.)

1 order to get him out of Maguass' unit and that Barda falsely claimed Plaintiff stated he was suicidal,

2 these actions do not give rise to a claim against Maguass or Barda for acting with deliberate

3 indifference to a substantial risk of serious harm to Plaintiff.[2]

4     Although antipsychotic medications have therapeutic benefits, they also "can have serious,

5 even fatal, side effects."  Washington v. Harper, 494 U.S. 210, 229, 110 S.Ct. 1028 (1990).  As

6 psychiatrists, Drs. Cohen and Talisman would be aware of the benefits versus the risks, and of the

7 seriousness of administering such medication.  Plaintiff's allegations that Cohen and Talisman knew

8 he did not need treatment but nonetheless participated in the filing of a petition to continue Plaintiff's

9 treatment, and that Talisman gave false testimony in support of the petition are sufficient to support

10 a claim under the Eighth Amendment.

11     **D.**    **Due Process Claim**

12     Prisoners have a substantial liberty interest, grounded in the Due Process Clause, in avoiding

13 the involuntary administration of antipsychotic medication.  Harper, 494 U.S. at 229.  Prisoners may

14 be involuntarily medicated if they are dangerous to themselves or others, and the treatment is in their

15 best medical interest, but they must be provided with procedural protections to ensure that the

16 decision to medicate them involuntarily is not arbitrary or erroneous.  Id. at 227-28.

17     Plaintiff's allegations establish that he was provided with an administrative hearing and that

18 a judge granted the petition to involuntarily medicate him.  As a result, Plaintiff's allegations do not

19 support a claim that he was deprived of a protected liberty interest without due process of law.

20 Plaintiff's disagreement with the issuance of the petition and Plaintiff's allegation that Defendant

21 Talisman perjured himself are not sufficient to demonstrate that he was denied due process.

22     **E.**    **Supervisory Liability Claims**

23     Plaintiff filed grievances concerning the allegedly retaliatory psychiatric treatment and

24 property deprivation.  Defendants McGuinness, Minn, Sanchez, Cheung, Jensen, Junious, Davis,

25 Hodges-Wilkins, and Mason were involved in responding to the grievances, and Plaintiff alleges

26 ///

27

28     [2] There is no factual support in the complaint linking Maguass or Barda to the decision to involuntarily medicate Plaintiff with antipsychotic drugs for six months.  Therefore, they may not be held accountable under section 1983 for that decision or course of action.

1  claims against them for the violation of his constitutional rights under a theory of supervisory
2  liability.

3       The Supreme Court recently emphasized that the term "supervisory liability," loosely and
4  commonly used by both courts and litigants alike, is a misnomer. Iqbal at 1949. "Government
5  officials may not be held liable for the unconstitutional conduct of their subordinates under a theory
6  of *respondeat superior*." Id. at 1948. Rather, each government official, regardless of his or her title,
7  is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each
8  defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id.
9  at 1948-49. Further, the involvement of prison personnel in reviewing and issuing decisions on
10 Plaintiff's inmate appeals does not provide a basis for the imposition of liability on them for the
11 conduct of others. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); also Ramirez v. Galaza, 334
12 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Massey v.
13 Helman, 259 F.3d 641, 647 (7th Cir. 2001).

14      Plaintiff is attempting to impose liability on Defendants McGuinness, Minn, Sanchez,
15 Cheung, Jensen, Junious, Davis, Hodges-Wilkins, and Mason because he found their responses to
16 his grievances to be unsatisfactory. Plaintiff's disagreement and displeasure with the resolution of
17 his grievances by these Defendants do not provide any basis for the imposition of liability under
18 section 1983. Plaintiff fails to state any claims against Defendants McGuinness, Minn, Sanchez,
19 Cheung, Jensen, Junious, Davis, Hodges-Wilkins, and Mason.

20      **F.      Federal Assault and Battery Claim**

21      Plaintiff alleges claims for assault and battery, in violation of state law and his federal
22 constitutional rights. Assault and battery are tort claims under California law, and are not federal
23 claims, constitutional or otherwise. Plaintiff's attempt to state these tort claims under federal law
24 is disregarded.

25      California's Tort Claims Act requires that a tort claim against a public entity or its employees
26 be presented to the California Victim Compensation and Government Claims Board, formerly known
27 as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't
28 Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and

1   action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings

2   County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold

3   v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against

4   a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior

5   Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-

6   Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

7          Although Plaintiff alleges he exhausted the prison's administrative grievance procedure,

8   Plaintiff fails to allege compliance with the Tort Claims Act. As a result, Plaintiff is precluded from

9   pursuing any state law tort claims.

10          To the extent that this deficiency is curable, Plaintiff also fails to state a claim on the merits.

11   Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit

12   a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force

13   or violence upon the person of another." Cal. Penal Code § 240, 242 (West 2009); 5 B. E. Witkin,

14   Summary of California Law, Torts § 346 (9th ed. 1988). Plaintiff's complaint contains no

15   allegations supporting assault and battery claims against any Defendant.

16          **G.     Violation of Civil Code Section 52.1**

17          Plaintiff alleges a claim for violation of California Civil Code § 52.1, which authorizes a

18   claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion,

19   with an individual's exercise or enjoyment of rights secured by federal or state law." Jones v. Kmart

20   Corp., 17 Cal.4th 329, 331 (1998). A claim under section 52.1 requires "an attempted or completed

21   act of interference with a legal right, accompanied by coercion." Id. at 334.

22          Plaintiff's failure to allege compliance with the Tort Claims Act precludes his claim. Further,

23   Plaintiff has not alleged any facts demonstrating that he was threatened, intimidated, or coerced

24   during the interference with his First and Eighth Amendment rights. Therefore, Plaintiff fails to state

25   a cognizable claim for violation of section 52.1.

26          **H.     Claim for Declaratory Relief**

27          Finally, Plaintiff seeks a declaration that his rights were violated. "'A case or controversy

28   exists justifying declaratory relief only when the challenged government activity is not contingent,

1    has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well

2    be a substantial adverse effect on the interests of the petitioning parties.'" Feldman v. Bomar, 518

3    F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of Land Management, Medford

4    Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory

5    relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal

6    relations in issue nor terminate the proceedings and afford relief from the uncertainty and

7    controversy faced by the parties." U.S. v. State of Wash., 759 F.2d 1353, 1357 (9th Cir. 1985)

8    (citations omitted).

9            The governmental conduct at issue in this action occurred in 2008, and Plaintiff's remedy is

10   damages should he prevail on his claims that his constitutional rights were violated. Therefore,

11   Plaintiff is not entitled to declaratory relief and this action shall proceed as one for damages only.

12   **III.    Conclusion and Order**

13           Plaintiff's complaint states claims against Defendants Maguass and Talisman for retaliation

14   in violation of the First Amendment, and against Defendants Cohen and Talisman for violation of

15   the Eighth Amendment, but does not state any other claims for relief.

16           The Court will provide Plaintiff with the opportunity to file an amended complaint. Noll v.

17   Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff does not wish to file an amended

18   complaint and is agreeable to proceeding only against Defendants Maguass and Talisman on his First

19   Amendment claim, and Defendants Cohen and Talisman on his Eighth Amendment claim, Plaintiff

20   may so notify the Court in writing, and his other claims will be dismissed. Plaintiff will then be

21   provided with three summonses and three USM-285 forms for completion and return. Upon receipt

22   of the forms, the Court will direct the United States Marshal to initiate service of process on

23   Defendants Maguass, Cohen, and Talisman.

24           If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but

25   must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or

26   other federal rights, Iqbal, 129 S.Ct. at 1948-49; Jones, 297 F.3d at 934. Although accepted as true,

27   the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level

28   . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's claim for declaratory relief is dismissed from this action;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendants Maguass and Talisman on his First Amendment claim, and Defendants Cohen and Talisman on his Eighth Amendment claim; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   October 8, 2009          /s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE