# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON, | CASE NO: 1:09-cv-00484-GBC (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM |
| MAURICE JUNIOUS, et al., | (Doc. 7) |
| Defendants. | |

**I.    Procedural Background**

Barry Louis Lamon ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action was filed on March 16, 2009. Doc. 1. On October 8, 2009, the Court screened Plaintiff's complaint and have Plaintiff the opportunity to proceed only on cognizable claims or file an amended complaint. Doc. 6. On November 13, 2009, Plaintiff filed the first amended complaint. Doc. 7.

**II.    Screening**

**A.    Screening Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"'Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff.'" *Hamilton v. Brown*, 630 F.3d 889. 892-93 (9th Cir. 2011) (quoting *Resnick v. Warden Hayes*, 213 F.3d 443, 447 (9th Cir.2000). "'Additionally, in general, courts must construe pro se pleadings liberally.'" *Id.* A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In determining whether to dismiss an action, the Court must accept as true the allegations of the complaint in question, and construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### B. Plaintiff's Complaint

Plaintiff is currently a prisoner at the California State Prison, Corcoran ("CSPC") in Corcoran California, and is suing under section 1983 for events which occurred while a prisoner at CSPC. Doc. 7.

Plaintiff alleges that prior to February 19, 2008, Defendants were "aware of the existence of a shadow policy of retaliation, and a code of silence amongst Corcoran's personnel, under which [correctional officers] and other staff routinely and systematically retaliate against inmates for assaulting prison staff, filing grievances, lawsuits or complaints on prison staff . . . ." Doc. 7 at 7. According to Plaintiff retaliation takes the form of "unnecessary physical beatings, malicious property deprivations, sadistic and pain-inflicting food taintings . . . ." Doc. 7 at 7. According to Plaintiff, Defendants knew under what circumstances a prisoner's cell would be "given away" and conspired to orchestrate false mental health accusations and false reports that plaintiff felt suicidal for the purpose of ensuring that Plaintiff would be hospitalized long enough to lose his cell

placement. Doc. 7 at 8, 10-12, 14, 21, 24-25. Plaintiff details that Defendants Barda and Maguass conspired and gave false reports to have Plaintiff hospitalized and subjected to involuntary drug treatment. Doc. 7 at 10, 17-18.

Plaintiff alleges that Defendants Talisman, Cohen, Osborne and Barda subjected Plaintiff to "often involuntary treatment with psychiatric drugs to punish us for 'bringing our problems to [the Acute Care Hospital ("ACH")],' and to . . . deter us from coming back." Doc. 7 at 8. Plaintiff states that:

> On more than ten (10) occasions prior to February 19, 2008, I falsely claimed to "feel suicidal" so I could get to the ACH. Immediately upon arrival, each time, I would inform Defendants Talisman, Cohen, Osborne [and] Barda . . . that I was not suicidal and only alleged so as a ruse so I could bring them various declarations, appeals and other evidentiary documents that supported my claims of being abused. Despite my giving them or attempting to give tem such proofs, Defendants . . . chronically and unfairly refused to even accept any of the witness declarations or grievances filed by multitudinous other inmates making identical allegations to mines and, instead, would contribute additional knowingly erroneous "diagnoses" of my being "delusional," and only imagining that I was being subjected to the punishment into my departmental mental health records.

Doc. 7 at 8-9. Plaintiff states that Defendants Talisman, Cohen, Osborne and Barda knew it was the:

> often-employed defensive measure of those inmates being subjected to the retaliation shadow policy, including the Plaintiff, was for us to complain of non-existent mental and/or physical illness as to exploit to enter the ACH where we would malinger for ten or more days in the hopes that our cells would be re-assigned and we can, in that way, escape from particularly brutal [correctional officers] in our housing units.

Doc. 7 at 12.

Whenever Plaintiff pressed Defendants Talisman, Cohen, Osborne and Barda to acknowledge the existence of Plaintiff's evidence regarding the ongoing abuses in the prison, Defendants would repeatedly say that their jobs were to only hear about mental health complaints and that they were tired of Plaintiff discussing issues regarding the prison staff. Doc. 7 at 9. Additionally Defendants Talisman, Cohen, Osborne and Barda threatened to place Plaintiff on involuntary psychiatric drug treatment if Plaintiff kept returning to the "ACH." Doc. 7 at 9. Plaintiff, however, argues that the "ACH" was the only refuge that he had from "Defendant Maguass and his cronies" who subjected Plaintiff to various acts of cruel and unusual punishment such as beating Plaintiff while handcuffed, tainting his meals with "some excruciating-pain-causing chemical" and routinely stealing Plaintiff's

3

legal papers. Doc. 7 at 9 ¶ 22, 12, 13 ¶ 40.

When Defendants Talisman, Cohen, Osborne and Barda prescribed Plaintiff psychiatric medication for Plaintiff's allegations that Defendant Maguass and others were violating his rights, Plaintiff told Defendants that he would take the medication to prevent more invasive treatment, but informed Defendants that he was going to file a lawsuit for subjecting him to psychiatric medication. Doc. 7 at 9-10, 12. Plaintiff also warned Defendants Adams, Talisman, Cohen, Osborne and Barda that the law library correctional officer was violating his right to confidentiality by censoring his legal activity and circulating extra copies of his legal papers to the prison personnel which included Defendants. Doc. 7 at 10. Despite the veracity of Plaintiff's allegations, Defendants Adams, Talisman, Cohen, Osborne and Barda conspired and discredited Plaintiff, squelched his grievances and "implicitly endorsed the shadow policy and its effects against [him] by saddling [him] with a sham diagnosis of being delusional." Doc. 7 at 11.

Plaintiff also asserts that he informed Defendant Cohen that he Plaintiff historically takes the pill form of a medication called "Risperidone" and that he did not want to take the liquid form in fear that nurses would taint it in retaliation. Doc. 7 at 16. However, Defendant Cohen angrily responded that Plaintiff would take the medication the easy way of the hard way. Doc. 7 at 16. After Plaintiff's repeated refusal, he was strapped down in five-point restraints for four hours and injected with a large hypodermic needle of a tranquilizer called "Geodone." Doc. 7 at 16. Plaintiff alleges that "they . . . falsified reports to allege that I 'was in danger to myself and refusing treatment.'" Doc. 7 at 16. Based on these false reports, Defendants Cohen and Osborne certified Plaintiff for temporary involuntary treatment with a powerful anti-psychotic drug called "Zyprexa." Doc. 7 at 16. Because Defendants Talisman, Cohen, Osborne and Barda routinely threatened to involuntarily medicate Plaintiff, Plaintiff reluctantly participated in the mental treatment program and accepted the medications. Doc. 7 at 16.

Plaintiff alleges that Defendants Talisman, Cohen, Osborne and Barda subjected Plaintiff to a "dangerous and unnecessary course of treatment with psychiatric drugs in retaliation for [his] civil litigation activities." Doc. 7 at 18. As a result of Defendants' actions regarding Plaintiff's treatment, Plaintiff argues that Defendants Adams, Talisman, Cohen, Osborne and Barda are responsible for

six months of Plaintiff experiencing: 1) chronic and severe liver and kidney pain; 2) fatigue; 3) bloating; 4) constipation; 5) chronic blurred vision; 6) medication induced bizarre nightmares; 7) erectile dysfunction and inability to ejaculate; and 8) mental anguish.  Doc. 7 at 19-20.

Plaintiff also alleges that Defendant Maguass and Magana destroyed several hundred dollars worth of irreparable legal documents, evidence and a television in retaliation for Plaintiff filing an action against all of the Defendants except Defendant Magana. Doc. 7 at 20-22, 26.  At various times between April 9, 2008, and September 9, 2008, Defendant Maguass repeatedly gave Plaintiff sham and false responses to Plaintiff's efforts and formal grievances submitted to regain his property.  Doc. 7 at 22.

Plaintiff alleges that on February 20, 2009, and February 21, 2009, Defendant Maguass "openly acknowledged awareness of [Plaintiff's] amendment to the action and incessantly berated [Plaintiff], calling [him names such as] 'snitching motherfucker,' 'punk-bitch' and 'whining bitch.'" Doc. 7 at 20-21.  Plaintiff alleges that Defendant Maguass also issued meals to Plaintiff after he "sadistically reduced the portions, saturated them in liquid detergents and squished the contents into an offensive, unidentifiable and inedible glob."  Doc. 7 at 21.

Plaintiff states that On February 25, 2006, Plaintiff committed battery of correctional officer Fierro for tainting his meals in retaliation for Plaintiff's history of assault on correctional officers and civil litigation.  Doc. 7 at 22.  During April 9, 2008 and September 9, 2008, correctional officers including Defendant Magana repeated told Plaintiff that they had been to court before implying that they did not care about any lawsuits that did not care about Plaintiff's lawsuits against them.  Doc. 7 at 22.

**III.    Legal Standard and Analysis**

   **A.    First Amendment Retaliation**

A viable claim for First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord*

*Nevada Dept. of Corrections v. Greene*, --- F.3d ----, 2011 WL 3559955 at *2 (9th Cir. 2011) ("A viable claim for retaliation requires, in part, that an inmate demonstrate that the prison officials' adverse action does not reasonably advance a legitimate correctional goal."). Essentially, in Plaintiff's original complaint and amended complaint, he alleges that various defendants falsely stated that Plaintiff was threatening suicide so that he could be committed to a hospital for ten or more days because there is a regulation in place that allows moving prisoners out of their cells if they cease to occupy the cell for ten or more days. However, Plaintiff clearly states that "[o]n more than ten (10) occasions prior to February 19, 2008, [he] falsely claimed to "feel suicidal" so [he] could get to the ACH." Doc. 7 at 8. Plaintiff further alleges that he lies about being suicidal so that he could bring declarations and appeals to the hospital staff's attention. Doc. 7 at 8-9. Plaintiff alleges that Defendants knew that Plaintiff was lying and that lying about physical and mental illness was a means for inmates (including Plaintiff) to "exploit to enter the ACH" for the very purpose of staying for more than ten days so that he could get transferred. Doc. 7 at 12.

As with the original complaint, there are no facts in the complaint supporting a retaliation claim against Defendant Barda for admitting Plaintiff to the hospital. Although Plaintiff alleges Barda falsely claimed that Plaintiff told him he was suicidal, there is no indication of motive. Even if based on a false statement by Barda, the mere decision of Barda to admit Plaintiff to the hospital does not support a retaliation claim. Plaintiff's admission to repeatedly lying about being suicidal and asserting that he actually manipulates staff in order to be hospitalized so that he can be transferred from his cell fundamentally contradicts Plaintiff's claim that Defendants Talisman, Maguass, Cohen, Osborne and Barda conspired to lie about Plaintiff being suicidal in hopes that Plaintiff would be moved to a different cell.[1] As alleged, Plaintiff's complaint fails to demonstrate that the Defendants actions were because of Plaintiff exercising protected speech, but rather was because of Plaintiff's repeated statements that he was suicidal.

///

---

[1] Moreover, given that Plaintiff readily had knowledge at the time of filing the original complaint that Plaintiff routinely lies about being suicidal and that his goal is to remain hospitalized so as to transfer from his cell, Plaintiff could be subject a sanction pursuant to Rule 11 of the Federal Rules of Civil Procedure.

### B.      Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim," *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

Although Plaintiff claims that the psychiatrists, Defendants Cohen and Talisman knew that Plaintiff did not need psychiatric medication but forced him to have it is contradicted by Plaintiff's admission that he repeatedly falsely informs prison staff that he felt suicidal and purposefully manipulates staff so that he can be hospitalized.  The medical staff's response to Plaintiff's repeatedly stating he was suicidal does not amounts to an Eighth Amendment violation and at most is a difference in medical opinion.  Thus Plaintiff fails to state an Eighth Amendment claim stemming from psychiatric treatment based on Defendants reporting that Plaintiff was suicidal and treating

7

medical staff acting upon reports of Plaintiff's mental state.

### C.      Due Process

Prisoners have a substantial liberty interest, grounded in the Due Process Clause, in avoiding the involuntary administration of antipsychotic medication. *Washington v. Harper*, 494 U.S. 210, 229 (1990). Plaintiff's allegations in the original complaint and attachments of the administrative hearing transcript on the issue of involuntary administration of antipsychotic medication establish that he was provided with an administrative hearing and that a judge granted the petition to involuntarily medicate him. As a result, Plaintiff 's allegations do not support a claim that he was deprived of a protected liberty interest without due process of law.

## IV.     Conclusion and Order

The Court finds that Plaintiff's First Amended Complaint fails to state any Section 1983 claims upon which relief may be granted against the named Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." In addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted). However, in this action, Plaintiff filed two complaints and received substantial guidance from the Court in its screening order. Doc. 6. Even after receiving the Court's guidance, Plaintiff failed to make alterations or to include additional facts to address the noted deficiencies. Moreover, Plaintiff has admitted to the Court that he has lied on several occasions about being suicidal which undermines the key underlying premise to his claims that Defendants have falsely stated he was suicidal or have erroneously treated him for being suicidal. Doc. 7. Because of this, the Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore orders that further leave to amend not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

///

Accordingly, based on the foregoing, the Court HEREBY ORDERS that this action be DISMISSED in its entirety, WITH PREJUDICE, for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:    December 22, 2011

UNITED STATES MAGISTRATE JUDGE